The argument now in the case of Seats v. Wills. Mr. Pagliarella Good morning, Your Honor. May it please the Court, Chris Pagliarella for Appellant Devin Seats. The parties agree that Devin Seats brought his habeas petition seeking resentencing within a year, less tolling, of three serious convictions being vacated. For the armed habitual criminal conviction, the State doesn't dispute that Mr. Seats could not have sought to get that vacated prior to the 2018 decision of Ingri and G. So the only dispute on diligence is whether Seats moved too slowly to vacate the two unlawful use convictions. The State is just mistaken that Mr. Seats waited until 2019. Rather, his December 2016 post-conviction petition, documented on December 22nd and presumably mailed a couple weeks earlier, presented the request for vacature as the State recognized during those post-conviction proceedings. Accepting that date, that should be enough to resolve the diligence question in Mr. Seats' favor, whether calculated from when the subsequent law changed prospectively in Burns in December 2015 or when the Illinois Supreme Court first approved the retrospective relief sought in Ingri and G. in 2018. I'm happy to briefly defend the point, Your Honor, that I think both parties agree on, at least at a high level, that Mr. Seats' duty of diligence turns on when the law turns in his favor. And I'm happy to walk through the case timeline if that's helpful to the court. So in 2013, Aguilar finds on direct review a Class IV unlawful use conviction that was unconstitutional, but it carves out Class II convictions where the court identified a prior felony conviction. In 2015, though, just after Mr. Seats' direct state appeal ends, right, the State Supreme Court process is done, Burns discards the reservation Aguilar, extends Aguilar's claims to Class II convictions. That's the first example of a reversal by the Illinois Supreme Court, which both parties here agree it's unusual to have multiple reversals by the Illinois Supreme Court in this instance, by any State Supreme Court. Mr. Seats then files a post-conviction petition, presumably in the mail, within a year of the Burns decision, seeking to get those two unlawful use convictions off his record and get resentencing. So if the court determines Burns triggers due diligence, then that's diligent, right? The State has argued here below that that time would be not diligent to act, especially given the delay in receiving that information while incarcerated. And Mr. Seats also, in his certificate of appealability, presented to the court below that he did not receive notice of these decisions until well into 2016. However, you know, we further argue his due diligence is objective standard, alternatively, wasn't triggered until the Illinois Supreme Court made clear that he could get the kind of retroactive relief he sought. McFadden, 2016, just before his petition was filed, said you could get Aguilar and Burns convictions vacated. And indeed, the State doesn't point to any decision earlier than McFadden, 2016, that said that you can have that retroactive relief of any earlier decision from the Illinois Supreme Court. But suggested that judgments—McFadden suggested still that judgments based on Aguilar and Burns convictions that had not yet been vacated were still good. But it's only when Ingrid and Jeeve refer to McFadden was it clear that any conviction or sentence predicated on Aguilar or Burns conviction, even if it hadn't been vacated at the time, was void ab initio under State law. And you'll have to take my word for it on McFadden. The State itself had been representing reasonably—I believe it was Seth Pierce's case—that McFadden sort of foreclosed using the invalidity of those past sentences—invalidity of those past convictions, excuse me, rather—to challenge his sentences. To challenge their use of the sentence that had not previously been vacated. I'm happy to just briefly address, since I assume my friend on the other side will mention, the question of whether the Court is in any way foreclosed in addressing the questions that were presented in Certificate of Appealability. I don't think there's any sense in which it's foreclosed. First, briefly, the original habeas petition repeatedly refers to these convictions being just vacated, held to be void, and ruled void of points of the vacatur. The State obviously understood that in writing a response back that had to address D1D in full, recognizing that there could be timeliness from the time of vacatur. This Court, in issuing Certificate of Appealability, also readily recognized that argument, that grounds of timeliness, from the original petition. All the same— I'm a little puzzled. The Certificate of Appealability doesn't recognize arguments. It just authorizes appeals. It authorizes appeals. There's a question to be litigated. One observation that the prosecutor has made is that Johnson was never called to the district court's attention. Is that—do you agree that that's true? I agree, Your Honor. Let me go back and check, but I agree, Your Honor, that Johnson was not— Don't we have a forfeiture problem here? I don't believe so, Your Honor. So I agree that Johnson was not cited by the initial petition filed by Mr. Seitch, which was counsel. Now, clearly, there's some indicia of attorney abandonment following that counsel petition. You don't have a right to effective assistance on collateral review, right? But I just want to know whether it's correct that Johnson was never drawn to the district court's attention. I think the relevant facts were cited, but not Johnson as a case. That's correct, Your Honor. Okay. My second question is, has Johnson been applied by the Supreme Court or by this court outside the context of recidivist sentencing? Outside the context of recidivist sentencing? Right. There are two possible situations. Yes. One is the prior conviction was used as the basis of a recidivist sentence, say, to raise the statutory minimum. That's the kind of situation that was at stake in Johnson itself. You want to use it in a totally different way to say that the time restarts and everything is up for grabs again whenever any prior conviction is set aside, even if it was not used for recidivist sentencing. So somebody has a portfolio of 30 prior convictions. The sentencing judge just gives a perfectly ordinary sentence. No recidivist enhancement. Your argument seems to be that the time restarts and everything has to be done over. Johnson doesn't say that. Have we ever said that? So I'm going to stick it, Your Honor, between—just to make sure I can clarify your question. The substantive argument, which I think is based on Townsend and Tucker for constitutional law, and the way this court has elaborated that substantive due process right, Johnson is just speaking to procedurally what qualifies as their facts, 2254 here, factual predicate 2244, D1D. So all he's saying is our argument relies on the factual predicate of a vacatur. I agree that Johnson has not been cited in this court, to my knowledge, to say— No, I wish you would address my question. Okay. Has this court held that Johnson applies outside the context of recidivist sentencing? I think the answer to your question is not to my knowledge, Your Honor. But all we're using Johnson for, as I understand it, is, say, can a vacatur be a factual predicate for purposes of D1D? And then the question—and I thought, Your Honor's question, and I appreciate, Judge Eastbrook, feel free, please correct me, is whether then a vacatur has been invoked maybe, as you're saying, outside the context of recidivist sentencing. And I'm not aware that that particular fact pattern has come up before the court. This is a very unusual fact pattern where, you know, the reason these are all vacates— No, this has to be the perfectly normal set of facts. It's quite common for someone to have 10 or 15 prior convictions, but no recidivist sentencing occurs. One of those prior convictions may be set aside, but the sentencing judge would have said it wasn't relevant to me. When there's a recidivist sentence, we know that the prior conviction affected the current sentence. When there's not a recidivist sentence, we have no such knowledge. That's why this is a potentially important distinction. It's one your brief didn't address, and apparently it's one that has not been the subject of legal research. So for recidivist sentence, maybe I misunderstood the term. Recidivist sentence, I assume you're talking about the use of a prior conviction to then enhance a prior sentence or perhaps it's a factual predicate, which I think would be different of a conviction. Counsel, since this isn't a recidivist sentence, sentencing regime, why should we disturb with the—more than disturb, why should we find it unreasonable when the Illinois appellate court said that after looking at Judge Lynn's sentencing transcript, the consideration of the AUUW did not impact the sentence? Yes, Your Honor. So we think it was an unreasonable determination of the facts in light of the evidence presented. And the key fact of Directed Court 2, given a couple reasons of briefing, but the key fact of Directed Court 2 is the transcript of the initial post-conviction hearing, which is just to say this is not an ordinary case where the judge, you know, we know that he heard about these convictions, the issue of the sentence. We know that he said later, I did not consider the 2005 Amalfi use conviction against him because he had two other felony cases sentenced at the same time. That description only fits the two now vacated Amalfi use convictions that were on his record. He says, I didn't consider this because I had something else important to consider. So, you know, without getting into either the further distinctions of law where we say, Tucker says, you know, just direct attention suffices legally, we would just say that was an important fact. That was a key fact that was before the court. It was briefed in the reply brief, as you see, and the opening brief of the post-conviction appellate proceedings. And that was something that the court had to give attention to and had to respond to. I'm happy to reserve the time I have. Thank you. Ms. O'Connell. May it please the court. I'm Assistant Attorney General Erin O'Connell on behalf of the respondent warden. The habeas petition here fails for two separate and independent reasons. First, the habeas petition is untimely, as the district court correctly held. And second, the claim would fail even on the merits under Section 2254D because it's barred by a reasonable adjudication by the state appellate court and there is no clearly established Supreme Court precedent that that adjudication was contrary to or an unreasonable application of. I want to start with the timeliness because I think the crux of the issue here is whether this was a factual predicate, whether the orders of vacater that he's relying on to reset the time period were actually a factual predicate of his claim. And the clearest evidence that it was not is the fact that he had litigated that claim previously in both the post-conviction trial court and in his appellate briefs before he obtained the orders of vacater. Those were not necessary for those courts to address the merits of his claim. Both of those courts looked at the case and rejected it on the merits and said there was no reliance on those convictions at the time of sentencing. So the orders of vacater were sort of, under this framework, evidence in support of his claim, but they weren't the factual predicate of his claim and they didn't just restart the limitations period under 2254 D1D. On the merits, just briefly, I just wanted to emphasize. So for the most part, a lot of the cases that are cited by Petitioner, especially in his reply brief, are these recidivist cases, which don't apply on these facts because we don't have an enhancement here. We don't have convictions that set the limit or the minimum sentence and raised it above where it would otherwise be. His sole argument is that these were in the record, they were in the PSI, and the trial judge knew about them at the time it sentenced him within the ordinary range for aggravated battery with a firearm. The circuit precedent can't elaborate on what the Supreme Court has already held, but for the most part it's also just distinguishable because it deals with a totally different factual circumstance. In this case, the Supreme Court precedent at issue, there are two cases. There is Townsend and Tucker, and he has to show that one of those two cases clearly established that this was a violation of the Constitution. Both of those cases are distinguishable for multiple reasons, and neither of them can be generalized to the extent that Petitioner would need to show that this was an unreasonable application of clearly established law. I think Tucker is closer, and Tucker dealt with convictions that were obtained in violation of the Constitution, in violation of Gideon v. Wainwright, and he would need to generalize this case to stand for the proposition that any time a conviction is in some way unconstitutional, it can never be considered as sentencing. But the Supreme Court has already itself said that case is limited to Gideon violations. It said that in Custis and Daniels. So the Supreme Court has already made clear that he's trying to stretch that holding beyond the facts of that case and in a way that would not be appropriate on federal habeas review. And then one final point I would make is that the de-determination was on the reliance point. Even interpreting the principle in the most general way in Petitioner's favor to say reliance on this type of conviction is unconstitutional, the state court said there was no reliance. And I heard him to say that the evidence that he has that contradicts that finding was the post-conviction trial court's ruling on his pro se petition, which is in the supplemental record at page R230. And I actually could be... The context makes clear that the court was misunderstanding his pro se petition to be challenging the 2005 conviction. Fairly read what the court is saying in this quote that he's relying on is that the court didn't rely on any one conviction in isolation. It instead relied on the fact that he had an extensive criminal history. That's true if we're talking about the 2005 conviction or the 2007 AUW convictions because he also had all of the 2005 convictions that are still valid that were still properly before the court at sentencing and that the court did consider when it set his sentence at 20 years. So Petitioner has failed to overcome that dispositive factual determination, and that provides yet another reason to affirm the district court judgment denying previous relief if the court has no further questions. Thank you. Thank you, counsel. Mr. Pagliarolo, the court appreciates your willingness to accept the appointment in this case and the willingness of the law firm and your assistance to the court as well as your client. Thank you. The case is taken under advisement.